# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | **No. 02 CR 1205** |
| v. | ) | |
| | ) | **Magistrate Judge Geraldine Soat Brown** |
| | ) | |
| THE L.E. MYERS COMPANY, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

At a hearing on April 25, 2005, a ruling was made on the remaining issues regarding

Defendant's Motion *In Limine* Regarding "Other Bad Acts." [Dkt 55.] This opinion sets out the

reasons for that ruling.


## BACKGROUND

Defendant the L.E. Myers Company ("L.E. Myers") was charged in two counts of an

indictment with violating a section of the Occupational Safety and Health Act ("OSHA"), 29 U.S.C.

§ 666(e), which provides:

> Any employer who willfully violates any standard, rule, or order promulgated
> pursuant to section 655 of this title, or of any regulations prescribed pursuant to this
> chapter, and that violation caused death to any employee, shall, upon conviction, be
> punished by a fine of not more than $10,000 or by imprisonment for not more than
> six months, or by both; except that if the conviction is for a violation committed after
> a first conviction of such person, punishment shall be by a fine of not more than
> $20,000 or by imprisonment for not more than one year, or by both.

Specifically, the indictment charges that L.E. Myers was engaged in the repair and

maintenance of high voltage power transmission lines on towers located in various locations in

Illinois, and that Blake Lane and Wade Cumpston, two employees of L.E. Myers, died from injuries

sustained by electrocution. Blake Lane died on or about December 28, 1999 while working on a

tower in Mt. Prospect, Illinois. Wade Cumpston died on or about March 25, 2000 while working

on a tower in Plainfield, Illinois. The indictment charges that L.E. Myers violated certain regulations

promulgated by the Secretary of Labor pursuant to OSHA, causing the deaths of Blake Lane and

Wade Cumpston.

## THE INDICTMENT

In relation to the deaths of both Blake Lane and Wade Cumpston, the indictment alleges that

L.E. Myers violated the following three regulations:

> Employees shall be trained in and familiar with the safety-related work practices,
> safety procedures, and other safety requirements in this section that pertain to their
> respective job assignments. Employees shall also be trained in and familiar with any
> other safety practices, including applicable emergency procedures . . . that are not
> specifically addressed by this section but that are related to their work and are
> necessary for their safety.

29 C.F.R. § 1910.269(a)(2)(i);

> Qualified employees shall also be trained and competent in: (A) The skills and
> techniques necessary to distinguish exposed live parts from other parts of electric
> equipment, (B) The skills and techniques necessary to determine the nominal voltage
> of exposed live parts, (C) The minimum approach distances specified in this section
> corresponding to the voltages to which the qualified employee will be exposed, and
> (D) The proper use of the special precautionary techniques, personal protective
> equipment, insulating and shielding materials, and insulated tools for working on or
> near exposed energized parts of electric equipment.

*Id.* § 1910.269(a)(2)(ii); and

> The employer shall ensure that the employee in charge conducts a job briefing with
> the employees involved before they start each job. The briefing shall cover at least
> the following subjects: hazards associated with the job, work procedures involved,

2

special precautions, energy source controls, and personal protective equipment requirements.

*Id.* § 1910.269(c).

In relation solely to the death of Blake Lane, the indictment alleges that L.E. Myers violated

the following four regulations:

Existing conditions related to the safety of the work to be performed shall be determined before work on or near electric lines or equipment is started. Such conditions include, but are not limited to, the nominal voltages of lines and equipment, the maximum switching transient voltages, the presence of hazardous induced voltages, the presence and condition of protective grounds and equipment grounding conductors, the condition of poles, environmental conditions relative to safety, and the locations of circuits and equipment, including power and communication lines and fire protective signaling circuits.

*Id.* § 1910.269(a)(3);

Only qualified employees may work on or with exposed energized lines or parts of equipment. Only qualified employees may work in areas containing unguarded, uninsulated energized lines or parts of equipment operating at 50 volts or more. Electric lines and equipment shall be considered and treated as energized unless the [lockout/tagout procedures of § 1910.269(d) or the deenergizing lines and equipment procedures of § 1910.269(m)] have been followed.

*Id.* § 1910.269(l)(1);

When an unqualified person is working in an elevated position near overhead lines, the location shall be such that the person and the longest conductive object he or she may contact cannot come closer to any unguarded, energized overhead line than . . . (1) [f]or voltages to ground 50kV or below – 10 ft. (305 cm).

*Id.* § 1910.333(c)(3)(i)(A); and

The employer shall ensure that no employee approaches or takes any conductive object closer to exposed energized parts than set forth in Table R-6 through Table R-10, unless: (i) The employee is insulated from the energized part (insulating gloves or insulating gloves and sleeves worn in accordance with paragraph (l)(3) of this section are considered insulation of the employee only with regard to the energized part upon which work is being performed), or (ii) The energized part is insulated from the employee and from any other conductive object at a different potential, or

(iii) The employee is insulated from any other exposed conductive object, as during live-line bare-hand work.

*Id.* § 1910.269(l)(2).

In relation solely to the death of Wade Cumpston, the indictment alleges that L.E. Myers violated the following regulation:

Temporary protective grounds shall be placed at such locations and arranged in such a manner as to prevent each employee from being exposed to hazardous differences in electrical potential.

*Id.* § 1910.269(n)(3).

## DISCUSSION

The government provided L.E. Myers' counsel with notice of its intention to introduce evidence pursuant to Fed. R. Evid. Rule 404(b).[1] L.E. Myers filed a Motion *In Limine* Regarding "Other Bad Acts." After submissions and argument by the parties, the court issued rulings with respect to certain of the government's Rule 404(b) evidence. *See, e.g.*, Order, April 13, 2005. [Dkt 78.] By the hearing on April 25, 2005, three types of evidence remained in dispute: (1) Prior OSHA citations; (2) L.E. Myers' internal safety audits; and (3) L.E. Myers' disciplinary records.

---

[1]Fed. R. Evid. Rule 404(b) provides, in relevant part:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial . . . .

4

The Seventh Circuit has established a four-factor inquiry to determine the admissibility of other acts evidence pursuant to Rule 404(b), under which the government bears the burden of proving that:

> (1) the evidence is directed toward establishing a matter in issue other than the defendant's propensity to commit the crime charged; (2) the evidence shows that the other act is similar enough and close in time to be relevant to the matter in issue; (3) the evidence is sufficient to support a jury finding that the defendant committed the similar act; and (4) the probative value of the evidence is not substantially outweighed by the danger of unfair prejudice.

*U.S. v. Jones*, 389 F.3d 753, 757 (7th Cir. 2004) (quoting *U.S. v. Long*, 86 F.3d 81, 83 (7th Cir. 1996)).

The government claims that the Rule 404(b) evidence is directed to establishing that L.E. Myers' violation of the regulations was "willful." After considering submissions and argument by the parties, the court determined that the jury will be given the following definition of "willful":

> A violation of an OSHA regulation or safety standard is willful if the employer has actual knowledge that its actions do not comply with the regulation or standard, and the employer intentionally disregards the requirements of the regulation or standard or is deliberately indifferent to those requirements. The employer need not have acted maliciously or specifically intended to harm its employees.

A.    Prior OSHA Citations

The government seeks to introduce evidence of five prior civil OSHA citations issued to L.E. Myers in situations where, the government contends, L.E. Myers violated OSHA standards identical or similar to those charged in the indictment. The government argues that the citations demonstrate L.E. Myers' knowledge of the OSHA standards and deliberate indifference to the requirements of those standards. The government points to a number of decisions, including a recent decision by the Seventh Circuit, *Lakeland Enter. of Rhinelander, Inc. v. Chao*, 402 F. 3d 739 (7th Cir. 2005),

5

allowing the admission of prior violations of the OSHA standards as evidence of willfulness. In *Lakeland*, the Seventh Circuit affirmed a decision by the Occupational Safety and Health Review Commission assessing a civil penalty against the defendant for willfully violating an OSHA regulation regarding trenching. 402 F.3d at 741. The Seventh Circuit observed that the Administrative Law Judge's decision that the violation was willful was supported by evidence including six OSHA citations since 1990, at least three of which were conceded by the defendant. *Id.* at 748. The *Lakeland* decision supports the government's position that prior citations may be admitted to demonstrate that an OSHA violation was willful, satisfying the first of the four factors set out in *Jones*. However, the *Lakeland* case was an administrative proceeding. In this case, a criminal jury trial, the court has a duty to determine whether the proposed evidence meets all of the criteria to be admissible under Rule 404(b).

The second factor under *Jones* is whether the other acts are similar enough and close enough in time to be relevant. L.E. Myers argues that none of the prior citations involved violations of the regulations at issue in this case, which are under 29 C.F.R. § 1910.269 governing maintenance work on electrical transmission systems. Rather, the prior citations involved the construction regulations under 29 C.F.R. § 1926.950. The government responds that, although the regulations cited are different, the requirements of those regulations are similar enough to those at issue in this case such that L.E. Myers' continued disregard of those requirements is evidence of willfulness. (Govt.'s Resp. at 3-5.) [Dkt 60.]

The five prior citations charged L.E. Myers with violating three regulations:

6

(a)     Citations issued in 1984, 1988 and 1989 charged violations of 29 C.F.R. § 1926.950(c)(1) (minimum approach distances).[2] The government argues that this standard requiring employees to maintain a minimum distance from energized lines unless either the employee or the energized line is guarded by insulation is nearly identical to 29 C.F.R. § 1910.269(1)(2) at issue in this case. (Govt.'s Resp. at 3, 5.)

(b)     A citation issued in 1989 charged violation of 29 C.F.R. § 1926.21(b)(2) (training requirements).   The government argues that this training requirement is similar to 29 C.F.R. § 1910.269(a)(2)(i) at issue in this case. (Govt.'s Resp. at 3, 5.)[3]

(c)     A citation issued in 1994 charged violation of 29 C.F.R. § 1926.955(c)(2) (job briefing requirements). The government argues that this requirement parallels the job-briefing requirement of 29 C.F.R. § 1910.269(c) at issue in this case. (Govt.'s Resp. at 3, 5.)

Citation Nos. 1045210, 1867795, 104365564, 106275761, 103006110.[4]

Having reviewed the citations at issue, the court concludes that, with one exception, the regulations under which the citations were made are similar enough to the regulations at issue here, and close enough in time that proof of the continued disregard of the requirements might evidence willfulness in the acts at issue here. *See Georgia Elec. Co. v. Marshall*, 595 F.2d 309, 319 (5th Cir. 1979) (allowing evidence of a prior OSHA violation because "[a]though not a violation of the identical provision cited here, this violation surely should have made the Company cognizant both

---

[2]As will be discussed below, this 1989 citation charged a violation of Maryland state regulations, not OSHA.

[3] The government actually stated that this 1989 citation charged violation of § 1926.22 (not § 1926.21(b)(2)), and that the Regulation at issue was § 1910.269(c) (not § 1910.269(a)(2)(i)), but those appear to be mistakes or typographical errors.

[4] The government tendered to Defendant's counsel and the court copies of these citations (as well as agreements to settle the citations) it proposed to introduce into evidence. Those documents have not been filed and are not in the record at this time. They will be cited herein as "Citation No. _____" and "Settlement Agt. dated _____."

of the dangers of allowing its employees to work too close to live electric circuits and to the fact that there were OSHA regulations on the subject that had to be followed"). The exception is Citation No. 104365564, which was a charge brought by Maryland state regulators. Although that citation refers to 29 C.F.R. § 1926.950(c)(1), it also states, "This citation describes alleged violations of the Maryland Occupational Safety and Health Act . . . and Regulations adopted thereunder." (Citation No. 104365564.) The government has not demonstrated that the Maryland laws and regulations are similar enough to the OSHA regulations to be relevant to demonstrate willfulness in the present case. Furthermore, the only evidence the government has proffered regarding that citation is the citation itself. As will be further discussed below, the citation is not evidence that the charged acts were committed. Accordingly, L.E. Myers' Motion *In Limine* is granted with respect to Citation No. 104365564.

The next factor under *Jones* is whether the evidence is sufficient to support a jury finding that the defendant committed the similar act. The government has proffered copies of the citations issued by OSHA. If the only purpose for which the government would use the citations were to show that in 1999 and 2000, L.E. Myers had actual knowledge of the regulations, the citations alone might arguably suffice. However, the government also wants to argue that L.E. Myers committed the acts alleged in the prior citations, to demonstrate that the acts charged in the indictment were willful, *i.e.*, that L.E. Myers intentionally disregarded the requirements of the standards or was deliberately indifferent to those requirements. The citations alone, which are merely charges, are not proof that the act charged was committed. To satisfy that factor the government has also proffered agreements

8

entered into by L.E. Myers to settle each citation except Citation No. 104365564, discussed above.[5] The government claims that L.E. Myers' settlement of the citations is an admission sufficient to support a jury finding that L.E. Myers committed the violation claimed.

L.E. Myers objects to the admission of the settlement agreements, arguing that settlement agreements are not admissions of guilt or liability but, rather, "compromises between potential litigants made for a variety of practical purposes, including the avoidance of the costs and uncertainties of litigation." (Def.'s Mem. Re Proffered Settlements of Civil OSHA Citations at 1.) [Dkt 79.] L.E. Myers cites Fed. R. Evid. 408, which provides:

> *Evidence of* (1) furnishing or offering or promising to furnish, or (2) *accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.* Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

(Emphasis added.) L.E. Myers also cites two civil cases applying Rule 408: *McInnis v. A.M.F., Inc.*, 765 F.2d 240, 247 (1st Cir. 1985) and *Scaramuzzo v. Glenmore Distilleries, Co.*, 501 F. Supp. 727, 732-33 (N.D. Ill. 1980). (Def.'s Mem. Re Proffered Settlements of Civil OSHA Citations at 2.) Neither of those cases is on point here. *McInnis* was a products liability suit against a motorcycle manufacturer. The First Circuit held it to be reversible error to admit evidence of a settlement between the plaintiff and a third party because the only purpose of the evidence was to suggest that

---

[5]The government states that it has not been able to obtain a copy of the settlement agreement regarding that citation. (Govt.'s Resp. Def.'s Mem. Re Proffered Settlements of Civil OSHA Citations at 6.) [Dkt 80.]

the third party, not the defendant, was the cause of the plaintiff's injuries. 765 F.2d at 250-51. In *Scaramuzzo*, an employment discrimination action, the District Judge granted a motion in limine to exclude evidence of other discrimination charges that had been filed against the defendant or the settlement of those charges, on public policy grounds as well as undue prejudice. 501 F. Supp. at 732-34. In contrast, the precedents, including *Lakeland*, support the admission of prior OSHA citations as evidence of willfulness.

The government cites *U.S. v. Prewitt*, 34 F.3d 436, 439 (7th Cir. 1994), in which the Seventh Circuit stated that Rule 408 should not be applied to criminal cases. The court held that it was not error to admit statements made by the defendant in the course of settlement negotiations with the Indiana Secretary of State's Securities Division as evidence in a trial for mail fraud. *Id.* The Seventh Circuit stated that reading Rule 408 "suggests that it should apply only to civil proceedings," and "[n]othing in Rule 408 specifically prohibits that receipt of evidence in criminal proceedings concerning the admissions and statements made at a conference to settle claims of private parties." *Id.* L.E. Myers argues that *Prewitt* applies only to statements regarding liability and does not "suggest that otherwise irrelevant evidence - such as the fact that there was a mere agreement to compromise a claim - would be admissible." (Def.'s Mem. Re Proffered Settlements of Civil OSHA Citations at 2 n. 1) (emphasis omitted.) However, in each of the settlement agreements, L.E. Myers withdrew its contest of the relevant citation and agreed to abate or correct the violations. L.E. Myers denies that such an agreement is an admission that the violation occurred, and argues that the violation is "mooted" when it involves a past event, such as the failure to hold a pre-job briefing. (*Id.* at 4.) L.E. Myers further argues, "such agreements are intended to address ameliorative action that an employer will take to ensure future violations do not occur." (*Id.*) However, that argument

10

actually supports the admission of the agreements as evidence of willfulness if the government proves the charges alleged in the indictment.[6]

In addition, the 1988 settlement agreement for Citation No. 1867795 provides, "By entering into this agreement, the employer does not admit that it violated the cited standards for any litigation or purpose *other than a subsequent proceeding under the Occupational Safety and Health Act.*" (Settlement Agt. dated March 25, 1988 at 2) (emphasis added.) That language suggests that L.E. Myers was aware that its settlement of that citation could be used in other OSHA proceedings as an admission of liability.

The final factor under the *Jones* case is whether the probative value of the evidence is outweighed by unfair prejudice. Initially, the government had submitted excerpts from an OSHA web page with descriptions of the incidents giving rise to the citations, including facts not contained in the citations or settlement agreements. The government will not be permitted to introduce those web page descriptions. On the other hand, the court concludes that the evidence proffered by the government of the citations and the settlement agreements is not unfairly prejudicial.

Accordingly, L.E. Myers' Motion *In Limine* is granted as to Citation No. 104365564, and denied as to Citation Nos. 103006110, 106275761, 1867795, and 1045210. L.E. Myers may propose a limiting instruction to be read when the citations are introduced.

---

[6]L.E. Myers submits the affidavit of Stephen C. Yohay, who has served as counsel for L.E. Myers, to describe the process by which such settlement agreements are reached, and to support its position that the settlement agreements fail to demonstrate any admission by Defendant regarding the alleged violations. The government objects to the court's consideration of that affidavit. In view of the disposition of this issue, the government's objection is moot.

11

B.    Safety Inspections and Disciplinary Records

The evidence at issue in this portion of Defendant's Motion relates to the allegations in the indictment that L.E. Myers' failure to ground the work site properly caused Wade Cumpston's death. (*See* Feb. 11, 2005 Hrg. Tr. at 4-5.) The government has identified approximately 30 of L.E. Myers' "Job Safety Analysis Reports," which document observations made by L.E. Myers' employees while inspecting work sites. (Govt.'s Resp., Ex. D.) The safety reports appear to span a time period from 1998 to 2000, close in time to the events charged in the indictment. The government intends to introduce the safety reports in conjunction with a summary of L.E. Myers' disciplinary records for the same period to demonstrate that L.E. Myers failed to discipline its employees for the violations reflected in the safety reports. (April 13, 2005 Hrg. Tr. at 111-12.) The government argues that this evidence shows L.E. Myers' indifference to employee safety. (*Id.* at 109, 112, 118, 124-25.)

L.E. Myers objects to the admission of the safety reports on a number of grounds. L.E. Myers argues that the internal safety reports do not show violations of OSHA standards, but rather reflect violations of its own internal safety procedures and policies, which, it argues, are stricter and broader than that required by the OSHA regulations. (*Id.* at 127-28, 133-34, 139.) It further argues that although some of those reports reference violations of its grounding procedures, the work sites are different in the type of work involved, the type of equipment being used, and the type of electrical systems involved, from the situation resulting in Cumpston's death. (Def.'s Mot. at 7; April 13, 2005 Hrg. Tr. at 134.)

The government argues that the safety reports and disciplinary records show L.E. Myers' indifference to employee safety and, specifically, L.E. Myers' plain indifference to requirements for equipotential grounding, a safety requirement that the government claims was violated in the

situation that led to Cumpston's death. (April 13, 2005 Hrg. Tr. at 109, 118, 124-25, 135.) The government admits that it is not claiming that the problems noted in the safety reports violated the OSHA standards. (*Id.* at 134.) Also, in response to a specific question, the government's counsel stated that the government does not believe that any of the safety reports relate to equipotential grounding. (*Id.* at 135.) Rather, the government asserts that the safety records show numerous incidents where L.E. Myers' employees performed grounding incorrectly. (*Id.* at 134-35.)

The court concludes that the proposed evidence fails to meet the standards required by *Jones* in order to be admissible under Rule 404(b). A significant problem is that the safety reports (which are all the evidence the government intends to introduce as to each claimed incident) disclose little about the facts of each situation.[7] Although each of the reports appears to mention some type of grounding issue, it is unclear from the face of the report whether the grounding problem mentioned in the report is in any way similar to the grounding problem that allegedly caused Cumpston's death. For example, a report dated February 9, 2000 of work being done in Bowling Green, Kentucky to replace two steel poles states, "Boom truck was properly grounded. Bucket truck being used & Die [unclear] Elec test date was good but the bucket truck wasn't grounded. I advised Wimpy & he grounded it." (Govt.'s Resp., Ex. D, Bates No. LEM 9105.) The report lists the supervisor on that job as Wendell "Wimpy" Waldruff. (*Id.*) Apparently, the government intends to introduce that report and the summary of disciplinary records to show that L.E. Myers did not discipline Waldruff for not grounding the bucket truck, or at least that no discipline is reflected on the records. However, it is impossible to tell from the cryptic description in the report what degree of danger was involved,

---

[7]The government stated that it intends to introduce the safety reports and disciplinary records as business records of L.E. Myers, and the statements therein as admissions. (April 13, 2005 Hrg. Tr. at 115-16.)

13

let alone whether the facts reflect a violation of OSHA standards. In addition, that safety report also

notes that the overall safety conditions were "good" and that "Wimpy holds reg[ular]/daily safety

meetings." (*Id.*) In order to evaluate whether the failure to discipline Waldruff reflects indifference

to employee safety, the jury would have to know much more about the facts of that situation,

including allowing L.E. Myers an opportunity to explain why its records reflect no discipline of

Waldruff for this situation. And that is only one of the approximately 30 such reports that the

government proposes to introduce. The likelihood of jury confusion and distraction is apparent.

The government points to three cases as support for admitting the safety reports and

disciplinary records: *A.E. Staley Mfg. Co. v. Sec. of Labor*, 295 F.3d 1341 (D.C. Cir. 2002), *McKie*

*Ford, Inc. v. Sec. of Labor*, 191 F.3d 853 (8th Cir. 1999), and *Georgia Elec. Co.*, 595 F.2d 309.

Notably, each of those cases involved review of a civil administrative proceeding, not a criminal jury

trial.

In *A.E. Staley*, the defendant admitted the charged OSHA violations but disputed that the

violations were willful. 295 F.3d at 1343. The Occupational Safety and Health Review Commission

determined that previous dust explosions, internal audits and a survey by the National Institute for

Occupational Safety and Health had put the defendant on notice of serious problems, including the

improper location of certain equipment and lack of employee training. *Id.* at 1344. The Commission

considered evidence of a prior mock OSHA inspection conducted by the defendant which found

unsafe electrical equipment in the same places where the OSHA inspectors subsequently found the

violations at issue in the case. *Id.* at 1346. The Commission also considered an earlier internal

safety audit report prepared by a company employee who had identified unprotected electrical

equipment and specifically noted potential liability for OSHA penalties. *Id.* The employee's

14

recommendation for further action was not accepted, a fact that the Commission properly considered. *Id.* at 1347.

In *McKie*, the defendant's employee was killed when his head was caught as he was riding a freight elevator that had only three sides and no door, gate, or interlock safety device on the open side. 191 F.3d at 855-56. In addition to the configuration of the elevator, which, the court stated, "ma[de] the risk plainly obvious," the Administrative Law Judge considered the fact that, after a prior worker's compensation claim resulting from an employee's hand being caught in the freight elevator, the defendant permitted its employees to continue to ride the elevator. *Id.* at 856, 857. The court stated that "[t]he company did nothing of substance to prevent this dangerous practice." *Id.* at 857. The opinion also states without further elaboration that the defendant "had no meaningful safety program." *Id.* The court concluded that the Administrative Law Judge's characterization of the defendant's conduct as plain indifference was permissible. *Id.*

*Georgia Electric,* like the present case, involved the death of an employee by electrocution. Three months before the incident at issue, the defendant had been cited by OSHA as a result of an electrocution that had occurred at another site when an employee got too near a power circuit. 595 F.3d at 313. The evidence showed that the defendant never made any effort to acquaint its supervisory personnel with the OSHA standards. *Id.* at 319. In the present case, the government points out that the Commission also considered the defendant's apparent indifference to employee safety in that case, but the opinion does not discuss any evidence admitted on that point except the defendant's admission that it made no effort to instruct its employees about OSHA requirements, and the events of the incident resulting in the employee's death. *Id.* at 320.

15

None of those cases support the admission of the type of evidence the government seeks here. In each of the cases, the evidence supported the defendant's prior awareness of the hazard that gave rise to the subsequent charged violation, and the defendant's failure to address that hazard. In contrast, in the present case the safety reports do not provide enough detail about the problem to know whether the hazard was the same as that which caused Cumpston's death, or to know whether the actions violated the particular OSHA regulations charged in the indictment or, indeed, any OSHA regulation. Furthermore, most, if not all, of the safety reports reflect that corrective action was taken on the spot. *See, e.g.,* Govt.'s Resp., Ex. D, Bates No. LEM 8750 (Report dated March 13, 2000 stating, "Grounding problems were taken care of before leaving job site."); *id.*, Bates No. LEM 8873 (Report dated February 11, 2000 stating, "[H]ad crew move grounds closer to work site."); *id.*, Bates No. LEM 9105 (Report dated February 9, 2000 stating, "I advised Wimpy & he grounded it."); *id.*, Bates No. LEM 8875 (Report dated February 9, 2000 stating, "No line grounds. Talked with foreman[;] he will correct problems.").

As previously noted, all three of those reported opinions reviewed the findings of an administrative process assessing civil penalties for OSHA violations. In this criminal prosecution, the court must consider the admissibility of the evidence under Rule 404(b), as well as the potential for confusing the jury and causing unfair prejudice to the defendant.

The court concludes that the government has failed to establish the admissibility of the safety reports, and, even if the safety reports were assumed, *arguendo*, to be admissible, the probative value is outweighed by the potential for distracting and confusing the jury and for unfair prejudice to Defendant. Accordingly, Defendant's Motion *In Limine* is granted as to the safety reports. Because

L.E. Myers' disciplinary records are relevant only if the safety reports are admitted, Defendant's Motion *In Limine* is also granted with respect to the disciplinary records.

## CONCLUSION

For the foregoing reasons, Defendant's Motion *In Limine* Regarding "Other Bad Acts" is granted as to L.E. Myers' "Job Safety Analysis Reports" and disciplinary records and as to Citation No. 104365564, and denied as to the remaining OSHA citations. This ruling is in addition to, and does not replace, previous rulings made on the record.

IT IS SO ORDERED.

Geraldine Soat Brown
United States Magistrate Judge

April 27, 2005