UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | No. 02 CR 1205 |
| v. ) | |
| ) | Magistrate Judge Geraldine Soat Brown |
| ) | |
| THE L.E. MYERS COMPANY, ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Following its conviction on one of two counts in a criminal indictment, defendant the L.E. Myers Company ("Myers") moved for a new trial. That motion was denied. (Nov. 2, 2005 Mem. Op. & Order.) On August 10, 2005, Myers moved pursuant to Fed. R. Crim. P. 33 for a new trial based on what it alleges is newly discovered evidence. (Def.'s Mot. Based on Newly-Discovered OSHA Evidence ("Def.'s Mot.")). [Dkt 132.] For the reasons set out herein, Myers' motion for a new trial based on newly-discovered evidence is also denied.

## BACKGROUND

As discussed in the previous opinion, on May 19, 2005, a jury found Myers guilty on one count of the Indictment, which charged that Myers had violated five regulations promulgated by the Secretary of Labor pursuant to the Occupational Safety and Health Act ("OSHA"), resulting in the death of Myers' employee Blake Lane. [Dkt 121.] On June 15, 2005, the Occupational Safety and Health Administration published in the Federal Register proposed rules to update 29 C.F.R. §§ 1910

1

and 1926. (Def.'s Mot. Ex. 1, 70 Fed. Reg. 34822 (proposed June 15, 2005)). The proposed rules would add provisions relating to the relationship between a host employer, such as Commonwealth Edison was in this case, and a contract employer such as Myers, and impose additional responsibilities on a host employer at a work site.[1] Myers asserts that the preamble of the proposed rule constitutes newly-discovered evidence that contradicts the premise of the government's case and requires a new trial. (Def.'s Mot. at 7; Def.'s Reply at 5 [dkt 142].)

Initially, Myers argues that the government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), by failing to disclose prior to or during the trial the fact that OSHA was considering the proposed rules. (Def.'s Mot. at 12-15.) The government responds that the proposed rules and commentary cited by Myers were not promulgated until after the conclusion of the trial. (Govt.'s Resp. at 4.) [Dkt 138.] In February 2005 (prior to the trial), OSHA had submitted to the Office of Management and Budget ("OMB") a Draft Proposed Rule and Commentary, which included a disclaimer stating that the document was only in draft form and did not reflect official OSHA policy. (Govt.'s Resp. Ex. 2; *id.* at 3-4.) The draft was reviewed by the OMB and published in the Federal Register as a proposed rule in June 2005. (Govt.'s Resp. at 4.) The court does not find any basis for a violation of *Brady* in these circumstances. Indeed, in its Reply, Myers

---

[1] Specifically, the proposed rules provide that the host employer shall inform contract employers of:

> (1) Known hazards that are covered by this section, that are related to the contract employer's work, and that might not be recognized by the contract employer or its employees; and

> (2) Information about the employer's installation that the contract employer needs to make the assessments required by this section.

70 Fed. Reg. at 34936.

2

downplays its *Brady* argument as just one, and not the primary one, of its arguments. (Def.'s Reply at 6.)[2]

Additionally, Myers' Reply clarifies that it is the preamble to the proposed regulations, not the proposed regulations themselves, which constitutes the claimed exculpatory evidence. (Def.'s Reply at 5.) The preamble includes the following statements:

> Sometimes the host employer is aware of hazards that are present at its facilities of which the contractor *might not be aware*. For example, what appeared to be a static line on one electric utility's transmission system was energized at 4,000 volts. Static lines are typically grounded. An employee of a contractor, perhaps not understanding that the line was energized, contacted the static line and was electrocuted. Paragraph (c)(1)(i) of proposed § 1926.950 would address this problem by requiring the host employer to inform contract employers of any known hazards that the contractor or its employees *might fail to recognize*. This provision should ensure that the contractor will be able to take measures to protect its employees from hazards posed by the host employer's workplace. Although this provision would not require the host employer to inform the contract employer of hazards the contract employees should be expected to recognize, such as hazards posed by an overhead power line, the proposal would require the host employer to inform the contract employer of known hazards the contractor might not be aware of.

70 Fed. Reg. at 34839 (emphasis added).

Myers asserts that the preamble directly rebuts the government's theory at trial and is inconsistent with any finding that Myers acted willfully. Myers argues that the proposed rules represent an "official acknowledgment contradicting the premise of the prosecution" because "OSHA now publicly acknowledges that utilities should be required to warn outside contractors

---

[2] The Government argues that the June 2005 proposed rules are not the "newly discovered" or "suppressed" evidence at issue. (Govt.'s Resp. at 3-4.) Rather, because the trial concluded in late May 2005, the Government argues that the draft submitted to the OMB in February 2005 is really the "evidence" at issue. (*Id.*) Myers counters that as of May 16, 2005, the final step for reviewing the draft document was completed and it was on that date that the OMB review period ended and official OMB clearance was granted. (Def.'s Reply at 3, 7.) However, as will be discussed below, the relevant language is the same in both drafts, and the outcome would be the same regardless of whether the February 2005 draft or the June 2005 draft is considered.

3

about the presence of 'energized static wires' because contractors are not expected to recognize that type of hazard without such a warning." (Def.'s Mot. at 1.)

## ANALYSIS

The decision to grant a new trial is within the sound discretion of the trial judge. *U.S. v. Gillaum*, 372 F.3d 848, 857 (7th Cir. 2004). To be entitled to a new trial on the basis of newly discovered evidence, a defendant must show that: (1) the defendant became aware of the evidence only after trial; (2) the defendant could not, by exercising due diligence, have discovered the evidence sooner; (3) the evidence is material; and (4) in the event of a new trial, the evidence would probably lead to an acquittal. *U.S. v. McClurge*, 311 F.3d 866, 874 (7th Cir. 2002).

### I.

A threshold question is whether the preamble to a subsequently-proposed revision of a regulation is admissible in a criminal trial charging a violation of the regulation. Myers correctly observes that 44 U.S.C. § 1507 provides that the "contents of the Federal Register shall be judicially noticed." However, that does not resolve the admissibility issue. *See U.S. v. Wolny*, 133 F.3d 758, 765 (10th Cir. 1998) (stating that "[w]e cannot imagine that, in enacting §1507, Congress intended to override Rule 402, and make judicial notice mandatory, when a matter that appeared in the Federal Register is irrelevant to the proceeding at hand"). Myers argues that the statements in the preamble are relevant because they reflect OSHA's "position on the matter" and constitute admissions of a party opponent. (Def.'s Reply at 6, 8.)

4

Myers points to the fact that, when the proposed rules were cleared by the OMB for publication in the Federal Register, they no longer bore the disclaimer that had appeared in the February 2005 draft. (Def.'s Reply at 3-4.) That disclaimer stated, "This document does not represent official Occupational Safety and Health Administration (OSHA) policy." (Govt.'s Resp., Ex. 2.) Myers argues that "OSHA *intentionally removed* the disclaimer . . . . [I]n contrast with the preliminary version which contained the disclaimer, the approved language of the final version *was* OSHA's official statement on the matter." (Def.'s Reply at 4.)

The proposed regulations were presumably issued pursuant to the rule making provisions of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b). The APA requires an agency to publish in the Federal Register any proposed rule, including "either the terms or substance of the proposed rule or a description of the subjects and issues involved." *Id.* § 553(b)(3). After publication, the agency must allow interested persons an opportunity to participate by written or oral submissions. *Id.* § 553(c). The APA further provides, "After consideration of the relevant matter presented, the agency shall incorporate in the rules adopted a concise general statement of their basis and purpose." *Id.* In that process, the preamble statements are a step to the issuance of the agency's final "concise general statement." The preamble to the proposed regulations is not the final statement itself. The final statement and the final regulation may be very different from the current version, or the proposed regulations could even be withdrawn.

The Court of Appeals for the District of Columbia Circuit has declined to review statements made in a preamble to a proposed rule, holding that the challenged statements were not binding on either private parties or the agency. *Florida Power & Light Co. v. Environmental Protection Agency*, 145 F.3d 1414, 1416, 1419 (D.C. Cir. 1998). That is consistent with the principle that only final

5

rules, not proposed rules, represent an agency's final position. *See Commodity Futures Trading Commn. v. Schor*, 478 U.S. 833, 845 (1986) (a proposed regulation does not represent an agency's considered interpretation of its statute because an agency is entitled to consider alternative interpretations before settling on the view it considers most sound); *Clay v. Johnson*, 264 F.3d 744, 750 (7th Cir. 2001) (proposed regulations do not represent an agency's considered interpretation of its statute, and are not entitled to deference); *Eustace v. Commissioner of Internal Revenue*, 312 F.3d 905, 908 (7th Cir. 2002) (proposed rules have no legal effect).

The preamble at issue here, like the one at issue in the *Florida Power & Light* case, was published in the Federal Register, not the Code of Federal Regulations. There is no evidence that OSHA considers the preamble or the proposed regulation to be a final rule or to be binding on private parties. Accordingly, the preamble cannot be considered a final statement of OSHA, binding on the agency.[3]

## II.

Myers argues that the preamble is relevant as a factual acknowledgment by OSHA that energized static wires are not a hazard commonly recognized in the industry and, in particular, by outside contractors. (Def.'s Reply at 10-11.) Myers contends that the statements in the preamble represent an acknowledgment by OSHA that certain hazards (including energized static wires) that are created by a host employer are so unusual that an outside contractor would not be expected to recognize them without warning from the host employer. (Def.'s Mot. at 9; Def.'s Reply at 10-11.)

---

[3] The government also argues that OSHA's statements could not be admissible against the government in a criminal case. (Govt.'s Resp. at 6-7.) However, it is not necessary to reach that issue.

6

The preamble simply does not say what Myers argues it says. The preamble proposes that a host employer be required to inform a contract employer about hazards of which the contract employer "might not be aware" and "might fail to recognize." 70 Fed. Reg. at 34839. The preamble does not say, as Myers implies, that the hazard "should not be recognized" or "could not be recognized," or, as Myers suggests, that contractors "would not be expected to recognize" the hazard of energized static wires without a warning. As discussed in the previous opinion, the jury found that Myers willfully violated, *inter alia*, a regulation that required Myers to *determine* existing conditions before beginning the work.[4] Neither the preamble nor the proposed regulations suggests that a contract employer like Myers does not have an affirmative duty to determine existing conditions, or should avoid responsibility for willfully failing to do so. Rather, the regulations propose to add an additional obligation on the host employer.

Most importantly, the preamble does not exculpate Myers from its violation of the regulations, including the regulation requiring it to determine existing conditions, that governed on the day Blake Lane died. The evidence was undisputed that Darrin West, Myers' foreman, knew he was required by OSHA regulations to assume that the transmission lines on the tower were energized until proven otherwise. The evidence further showed that the presence of an insulator in proximity to the so-called static wire on the west side of the tower was an indication that the static wire was

---

[4] 29 C.F.R. § 1910.269(a)(3) provides:

Existing conditions related to the safety of the work to be performed shall be determined before work on or near electric lines or equipment is started. Such conditions include, but are not limited to, the nominal voltages of lines and equipment, the maximum switching transient voltages, the presence of hazardous induced voltages, the presence and condition of protective grounds and equipment grounding conductors, the condition of poles, environmental conditions relative to safety, and the locations of circuits and equipment, including power and communication lines and fire protective signaling circuits.

energized. There was evidence that the insulator was visible even from the ground. Myers' employees did not determine the condition of the line on the west side of the tower before starting the work, and the evidence amply supported the jury's conclusion that Myers' failure to determine existing conditions was willful.

## CONCLUSION

For the foregoing reasons, Defendant's Motion Based on Newly-Discovered OSHA Evidence is denied.

IT IS SO ORDERED.

*Geraldine Soat Brown*
Geraldine Soat Brown
United States Magistrate Judge

November 4, 2005